## No. 6813.

### JOSEPH BILLGERY vs. THOMAS FERGUSON.

A writ of seizure and sale can not legally issue, until three days after notice of the decree of court, granting the writ, has been served on the debtor.

The notice of judgment in executory proceedings, which must be served on the debtor three days previous to the actual seizure of the mortgaged property by the sheriff, *must* be signed, and issued by the *clerk* of the court, and not by the sheriff.

If such notice has been issued by the sheriff, and objection to it is formally made before any sale of the seized property has taken place, the objection will be sustained, and no rights or liens will accrue to the seizing creditor, in virtue of the seizure.

An adjudication of property under a judgment subsequently annulled by a regular decree of court, conveys no title.

Where property, within the parish of Orleans, has been seized by the sheriff under a writ of *fi. fa.*, and remains in his hands unsold until the return day of the writ, he must, in order thereafter to legally hold the property, and thus maintain on it the lien acquired to the creditor by his seizure, make due return of the writ on its return-day, and cause the clerk of the court to make and give to him a duly certified copy of the writ, within twenty-four hours after the return of the original. Otherwise, the sheriff will be without authority thenceforth to maintain the seizure.

An act of sale which contains the stipulation of a real price, no matter how fraudulent the sale may be, can not be disregarded, and assailed collaterally, like a simulated sale.

Counter letters can have no effect against creditors, or *bona fide* purchasers.

A mortgage primarily without any consideration given to secure certain negotiable notes in the hands of any future holder, becomes a valid mortgage in favor of any innocent third person who may acquire one of the notes before its maturity, and for value.

APPEAL from the Sixth District Court, parish of Orleans. *Rightor*,. J.

*Louque & Fernandez, J. C. Peirce,* and *Paul Capdeville* for plaintiff and appellee.

*McGloin & Nixon* for defendant.

The opinion of the court was delivered by

EGAN, J. On the first of September, 1876, the plaintiff, as the holder of certain mortgage notes of the defendant, sued out a writ of seizure and sale against the mortgaged property. The *writ* issued the same day

the *order* was granted without the issuance or service of the three days notice to the seized debtor required by arts. 735 and 736 of the Code of Practice.

On the second of September, 1876, however, the sheriff, as seems to have been heretofore customary in New Orleans, issued a notice or demand of payment to the defendant, and on the fifteenth of November, 1876, a further notice of the seizure of the mortgaged property, which was served upon the defendant on the next day, the sixteenth. The property remaining unsold, the sheriff collected the rents, and on the fifth of March, 1877, the plaintiff took a rule upon him and upon Mrs. Baranco to show cause why the rents and revenues should not be paid over to him. Mrs. Baranco answered the rule, claiming to be entitled to the revenues in preference to all others, first, by reason of priority of seizure; second, by virtue of the sale made to her "of all the rights, titles, and interests of Raymond in and to the contracts under which said market was built, and in and to said market," on the twenty-eighth of July, 1876, by virtue of and under an execution from the Fifth District Court of Orleans, issued upon a judgment in favor of the New Orleans National Bank vs. Joseph Raymond.

Mrs. Baranco's counsel claims, also, to have set up orally other objections to the plaintiff's rule, which, under the view we have taken of the case, it is unnecessary to consider.

Joseph Raymond was subsequently made a party to the rule and answered, denying that there had been any legal seizure herein, for this, "that this being an executory process, no legal notice of issuance of same has been made." The right of either Mrs. Baranco or Raymond themselves to assert claim to the fund in controversy, by way of third opposition, regularly filed by themselves, under the facts presented in the record may well be questioned. Yet when brought into court at the instance and under the rule of the plaintiff, the former, a judgment creditor of Raymond, and the latter, himself the holder of other mortgage notes of the same series as those upon which the seizure and sale was sued out, may be held to have sufficient interest to contest plaintiff's right to the fund in controversy. The one that she may have opportunity to contest with all the parties before the court, *(as Ferguson is not)*, the reality and good faith of the sale and mortgage from Raymond, a judgment debtor, to Ferguson, upon which these proceedings are based, and the other for the reason before stated, that he appears to be the mortgagee and vendee of the defendant and to have received from him other notes of the same series with those of the plaintiff, and further, according to the terms of what is called a counter letter found in the record *as between himself and Ferguson*, at least to be entitled on certain conditions to retake the property of the market itself.

In the case of Hart & Hebert, in Liquidation vs. Pike Brothers & Co., 29 An. 262, we held, and still adhere to that view of the law, that in matters of seizure and sale, the preliminary three days notice to the debtor, of the granting of the judge's order required by articles 735 and 736 of the Code of Practice, must be issued by the clerk of the court in which the order is obtained, and not by the sheriff, whose only duty is to serve it upon the seized debtor, and that the writ itself " can not legally issue until that notice has been given." No such notice was either issued or served in the present case at any time, either before or since the issuance of the writ and the seizure under it. On the contrary, as we have seen, the writ was issued on the same day the order for its issuance was obtained. The notices emanating from the sheriff which are found in this record are not those required by law, and do not supply in the present case the want of those which are required.

In the case of Jouet vs. Mortimer, 29 An. 206, we declined upon the facts of that case to set aside an accomplished sale where title had passed without objection by the seized debtor for the want of such preliminary notice. Here, however, the state of facts is entirely different—no sale has been made under plaintiff's writ, nor is there any question of title to property acquired under such sale. On the contrary, the plaintiff himself comes into court by way of rule upon the sheriff and other parties named, to show cause why certain rents and revenues collected by the sheriff should not be paid over to him, as seizing creditor, with the distinct allegation that the sheriff " refuses " to pay the same over to him. It is not even a question of recovery back from the plaintiff, after the receipt of funds so derived from the sheriff. In other words, he is asserting affirmatively and originally a right to a fund in the hands of the sheriff by virtue of a writ issued without warrant of law where this right depends solely upon the writ so illegally issued and served at his own instance, and *before* the acquisition of any other or greater right than those resulting from the mere seizure alone. Let us now consider the rights of Mrs. Baranco—those of Joseph Raymond need not be further considered for the reason that he does not even ask to receive the fund from the sheriff but only to defeat the plaintiff's right to it, and besides he neither alleges nor proves any seizure on his own behalf. Of the second ground set up by Mrs. Baranco in her answer to the rule in which she " assumes the character of plaintiff in reconvention," (i. e.) her rights by virtue of the alleged adjudication to her of the property seized on the twenty-eighth of July, 1876, under suit 5938 of the Fifth District Court of Orleans, it is only necessary to say that the alleged adjudication has been annulled and set aside by a judgment of this court, and is not now urged or relied upon. The first ground : that is, her alleged priority of seizure and consequent right to be paid by preference to the plaintiff and " all

others," depends upon a *fi. fa.* issued upon a judgment of the Fifth District Court of Orleans, in the same case in which the adjudication was set aside. It is true that the sheriff's return shows that the same property was seized under this suit on the fourth of September, 1876, while the seizure under the writ of seizure and sale of plaintiff was not made till November 15, 1876. Were this then a contest over rents and revenues collected by the sheriff between these dates, and were both seizures *valid and subsisting,* Mrs. Baranco's superior right would unquestionably have to be acknowledged and adjudged. The contest is not, however, over any rents or revenues prior to the last seizure, which the sheriff expressly tells us were never collected by him, but the present controversy is confined entirely to the fund derived from rents and revenues collected by the sheriff since November 15, 1876, and as he testifies under the plaintiff's writ, and by virtue of instructions from his attorneys. It is not necessary to determine in this case, but yet proper to remark, that it is the duty of the sheriff without any specific instructions to collect the rents and revenues of property under seizure in his hands, and that the mere absence of specific instructions to that effect by one of two seizing creditors, and the fact that they are given by the other, will not authorize the collection for account of one of the seizing creditors only, nor can the rights of the other be affected by or made to depend upon such state of facts. The existence of an injunction for a time, however, and of conflicting claims to the money, to the knowledge of the sheriff, accounts satisfactorily not only for his not at once collecting rents and revenues but for his refusal to pay over those subsequently collected, otherwise than under order of court, without assuming that an efficient officer failed to do his duty under either process. Now, as to Mrs. Baranco's seizure : The *fieri facias* in her case, that of the New Orleans National Bank vs. Jos. Raymond, was dated September 2, 1876, and levied on the fourth of September, 1876, and had expired on the fifteenth of November, 1876, the date at which the plaintiff's seizure under the writ of seizure and sale was made, unless it was kept alive by the demand by the sheriff from the clerk of a copy in accordance with the provisions for the parish of Orleans contained in article 642 of the Code of Practice. By that article, in all cases where a seizure is made under *fieri facias,* except in the parish of Orleans, it is the duty of the sheriff to return the original writ on its return day, and *to make* and retain a duly certified copy of the writ and *to proceed under such certified copy* in the same manner as though the original writ was in his hands; and to make due return thereon ; and in the parish of Orleans, the officer at the time of making return of the original writ " *shall cause to be made by the clerk of the court issuing said writ a duly certified copy hereof,*" which must be delivered by the clerk to the officer making the

return within twenty-four hours from the time of his returning the original ; and the officer *shall proceed under such certified copy so furnished him in the same manner as though the original writ was in his hands, and make due return thereon.*" We have been unable to find any such copy or any copy at all of Mrs. Baranco's writ, or of any return upon it in the record. So far as this record discloses the facts, the sheriff had no process, nothing under which "to proceed" on her behalf issued upon her judgment. As, however, Mrs. Baranco's writ and seizure were directed against Joseph Raymond and his property and that of Billgery against Thomas Ferguson and his property, and as we do not think the former can proceed otherwise than by a direct action, we are not called upon to decide what was the legal effect of the expiration and return of the writ without obtaining a copy upon the seizure already made prior to that time. He was, therefore, without either power or authority to proceed for either purpose after that date.

There is, however, another reason why giving to her the largest liberty to attack the sale from Raymond to Ferguson as a mere simulation, it can not be so regarded, certainly in this proceeding. That is, that whatever its purpose, and even though designed to defraud the creditors of Raymond, there appears to have been at least some of the elements of a real sale in it, and those very important ones, as this litigation demonstrates, that is, there was a real price evidenced by the payment of five hundred dollars each, and by the execution of the negotiable notes of the purchaser Ferguson, to a large amount, under some of which the money now in controversy has been realized. An inconsiderable price, or one stipulated to be paid in an unusual manner, may be a badge of fraud, but it is well settled that if there is a real appreciable price at all, however fraudulent the sale may be, it is not simulated. As to the so called counter letter, the plaintiff Billgery who appears in this litigation as the *bona fide* transferee, and holder for value of some of the mortgage notes given by Ferguson to Raymond in the sale as part of its price, was neither party nor privy to it, so far as appears from the evidence. Our own Civil Code provides, art. 2239, that "counter letters can have no effect against creditors or *bona fide* purchasers; although they are valid as to all others. That instrument in the present case is as follows: "I, the undersigned, do hereby certify that the sale made to me by Jos. Raymond, per act before T. Ducros, Notary, on the twenty-eighth day of October, 1874, of his rights, title and interest on the Second Street Market, I bind myself to re-transfer the said property to him when the said Joseph Raymond delivers to Thos. Ferguson the notes, that the said Thos. Ferguson has given to him as payment for the Revenue of Second Street Market.

    "Signed,       THOS. FERGUSON."

And taken in connection with the proof of the execution and real delivery of the notes to which this controversy itself bears testimony, this paper shows that Raymond himself, whatever his intentions, either in the sale or in the transfer of the notes, could not demand or obtain a re-convey-ance of the property without delivering them up to Ferguson.

There was, then, sufficient reality in the execution of the sale and mortgage to prevent its being treated as against Billgery, at least, as a mere simulation, and therefore disregarded by Mrs. Baranco in making her seizure of the property. In Brewer vs. Gay, 24 An. p. 36, it was held, and we think properly, "that although there was primarily no consid-oration for the mortgage, yet it having been made to secure any future holder of mortgage notes, the moment they changed hands for a valu-able consideration the mortgage became valid." This, however, is no new doctrine, but one of every-day practice, and, however unreal the original sale and mortgage as between the parties, the equitable doc-trine which is recognized and enunciated in the article of the Code in regard to the effect of counter letters would come in aid of the plaintiff as against both Raymond and Ferguson and we may add all holding or claiming through either of them, while in order to sustain even a direct action in avoidance of the contract it would be necessary to con-nect Billgery with the fraud or simulation involved in it ; and to have Ferguson before the court, also, as he is not. It is hardly necessary to cite the article of the Code, 2645, to show that if Billgery became trans-feree of the notes of Ferguson, or of any part of them, that such trans-fer carried with it and included the privileges and mortgages which were attached to them. This mortgage and vendor's privilege was recorded on the thirtieth of October, 1874, (the same day it was exe-cuted) both in the office of conveyances and of mortgages, and is admitted to have been so recorded anterior to the judgment of the New Orleans National Bank vs. Raymond, the same set up by Mrs. Baranco as subrogee. If, then, both her seizure and that of Billgery were even subsisting and legal she would have to yield to the superior claim and rank of the plaintiff in the rule on that, her only remaining ground for assertion of superior right. But as we have seen, under the facts of the case, that Mrs. Baranco could not directly seize and sell under her judg-ment against Raymond property standing on the public records in the name of Ferguson, to the prejudice of rights of mortgage acquired by Billgery quoad this proceeding a creditor not of Raymond but of the title holder Ferguson, and if she could not seize directly she can, of course, assert no right to the rents and revenues of the property. Upon consideration of the whole case—

It is, therefore, ordered, adjudged and decreed that the judgment of the court below be avoided and reversed ; that the demands of Mrs.

Baranco be rejected, that she pay the cost of her reconventional demand, and Joseph Billgery all other costs, including those of appeal.

It is further ordered that the rule taken by said Billgery upon the sheriff be discharged, and that his writ of seizure and sale be returned as having been prematurely issued and levied, and the seizure under it released and that his right to procure the issuance of a new writ according to law, and after proper and legal notice be reserved to him.